IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BEST VINYL, LLC, a Utah limited liability company; and VANGUARD VINYL, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HOMELAND VINYL PRODUCTS, INC., an Alabama corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**<br><br>Consolidated Case No. 2:10-cv-01158 DN<br><br>District Judge David Nuffer |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the following motions have been filed:

1. Marwit Capital Partners II, L.P.'s ("Marwit") Motion for Partial Summary Judgment or in the Alternative for an Order Establishing Specified Facts (Dkt. No. 102);

2. Homeland Vinyl Products, Inc.'s ("Homeland Vinyl") Motion for Summary Judgment against Marwit (Dkt. No. 121);

3. Homeland Vinyl's Motion for Summary Judgment against Scott Petersen and Vance Barrett (Dkt. No. 125);

4. Homeland Vinyl's Motion for Summary Judgment against Marilyn Petersen and Melanie Barrett (Dkt. No. 126); and

5. Vance Barrett, Melanie Barrett, Scott Petersen and Marilyn Petersen's Motion for Summary Judgment Against Marwit (Dkt. No. 130).

The hearing on these motions was held at 8:30 a.m. on October 25, 2012, before this Court. Homeland Vinyl appeared by and through its counsel, Eric G. Maxfield and J. Andrew Sjoblom of Holland & Hart LLP. Marwit appeared by and through its counsel, Eric P. Francisconi of Barnes Fitzgerald Francisconi & Zeman LLP. Scott Petersen, Marilyn Petersen, Vance Barrett and Melanie Barrett appeared by and through their counsel, Evan S. Strassburg and Michael C. Barnhill of Vantus Law Group, P.C. The Court declined to hear oral argument on any of the summary judgment motions. After reviewing all of the motions and supporting memoranda, opposition memoranda, reply memoranda, declarations and evidence filed by the parties with respect to these motions, the Court rules as follows.

## I. HOMELAND'S MOTION FOR SUMMARY JUDGMENT AGAINST MARWIT (DKT. NO. 121)

Homeland Vinyl's motion for summary judgment against Marwit on its counterclaim for breach of the Marwit Guaranty (Dkt. No. 121) is GRANTED based on the reasons stated in Homeland Vinyl's Memorandum in Support of Motion for Summary Judgment Against Marwit (Dkt. No. 122) and Reply Memorandum in Support of Motion for Summary Judgment (Dkt. No. 140) and as follows.

### A. Undisputed Material Facts

The Court finds that the following material facts are undisputed:

1. Homeland Vinyl manufactures and sells vinyl fence materials.

2. Beginning in approximately 2003, Homeland Vinyl began supplying vinyl fence products to Best Vinyl, LLC ("Best Vinyl").

3. In or about March 2007, Marwit Capital Partners II, L.P. ("Marwit") indirectly purchased a majority of the outstanding stock of Best Vinyl.

4. Effective March 10, 2010, Marwit entered into a Guaranty in favor of Homeland Vinyl.

5. The Guaranty states that "Marwit hereby unconditionally guarantees to Homeland Vinyl the full and prompt payment by [Best Vinyl] of the accounts payable owing to Homeland Vinyl that are more than 90 days aged from date of invoice when and as the same shall become due to Homeland Vinyl . . . ."

6. The Guaranty provides that "[e]xcept as otherwise provided in [the term provision] of this Guaranty, the obligations of Marwit under this Guaranty shall be absolute and unconditional . . . ."

7. Section 2.2 of the Guaranty provides, among other things, as follows:

**Unconditional Nature of Obligations.** Except as otherwise provided in Section 3.6 of this Guaranty, the obligations of Marwit under this Guaranty shall be absolute and unconditional and shall remain in full force and effect until the term of the Guaranty expires . . . .

. . . .

No set-off, counterclaim, reduction, or diminution of any obligation, or any defense of any kind or nature which Marwit has or may have against Homeland Vinyl shall be available hereunder to Marwit against Homeland Vinyl to reduce the payments to it under Section 3.1 of this Guaranty.

8. On March 10, 2010, the effective date of the Marwit Guaranty, Best Vinyl owed Homeland Vinyl $1,657,711 for product Best Vinyl had ordered and Homeland Vinyl had shipped to Best Vinyl.

9. In reliance on the Guaranty, Homeland Vinyl sold $4,678,038 of vinyl fence materials to Best Vinyl on 60-day credit terms following the execution of the Guaranty.

10. By its terms, the Marwit Guaranty terminated December 10, 2010, so any product purchased by Best Vinyl and invoiced on or after September 10, 2010 – 90 days before the

December 10, 2010 termination date of the Marwit Guaranty – would not be covered by the Marwit Guaranty.

11. Homeland Vinyl provided Best Vinyl product on 60-day credit terms from the date the Marwit Guaranty was executed until September 10, 2010.

12. On September 16, 2010, Mr. Smith sent Marwit a letter with an aged receivables report dated September 17, 2010, showing that Best Vinyl had failed to pay Homeland Vinyl $2,437,786 for vinyl fence product purchased and invoiced after the effective date of the Marwit Guaranty, and indicating that $988,939 of that amount was then due under the Marwit Guaranty.

13. On October 12, 2010, Homeland Vinyl's attorney also sent a demand to Marwit, enclosing an aged receivables report dated October 12, 2010, showing that Best Vinyl had failed to pay Homeland Vinyl $2,491,204 for vinyl fence product purchased and invoiced after the effective date of the Marwit Guaranty, and indicating that $1,599,471 of that amount was then due under the Marwit Guaranty.

14. As of December 10, 2010, Best Vinyl owed Homeland $2,491,204 for vinyl fence product purchased and invoiced after the effective date of the Guaranty.

15. As of December 10, 2010, $2,490,405 of that amount was aged more than 90 days from the date of invoice.

16. On January 5, 2011, Mr. Smith sent Marwit a letter with a schedule showing that Best Vinyl had failed to pay Homeland Vinyl $2,491,204 for vinyl fence product purchased and invoiced after the effective date of the Marwit Guaranty, and indicated that $2,490,405 of that amount was due under the Marwit Guaranty.

17. Marwit has never paid Homeland Vinyl any amounts under the Marwit Guaranty.

### B. The Marwit Guaranty Is Valid and Enforceable, and Its Language Is Clear and Unambiguous

"The elements of a prima facie case for breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[1]  The undisputed facts establish each element of Homeland Vinyl's cause of action against Marwit for breach of the Marwit Guaranty.

The language in the Marwit Guaranty is clear and unambiguous. "In Utah, [c]ontract construction begins and ends with the language of the contract. [A]s the Utah Supreme Court recently explained, the interpreting court must first determine whether the contract's language is ambiguous. . . . This is a question of law for the court to decide without reference to parol evidence. . . . [W]hen the contract is not subject to contrary interpretations, the contract is not ambiguous, and its plain meaning should be enforced."[2]  In *U.S. Bank, N.A. v. Sierra Building Products*,[3] the district court granted summary judgment against a guarantor, ruling that the plain and unambiguous language of the guaranty at issue "clearly provides that the guarantor . . . expressly waives all rights of setoff and counterclaims."[4]  Other courts have similarly enforced such waiver provisions.[5]

Marwit has asserted that the Marwit Guaranty is limited to invoices for purchases by Best Vinyl after the date of the Marwit Guaranty, and that Homeland did not have the unilateral right to determine which invoice or invoices Best Vinyl's post-Marwit Guaranty payments should be

---

[1] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[2] *U.S. Bank, N.A. v. Sierra Bldg. Prods., Inc.*, No. 2:11-CV-458 TS, 2012 WL 527623, at *2 (D. Utah Feb. 16, 2012) (footnotes omitted).

[3] *Id.*

[4] *Id.* at *3.

[5] *See*, *e.g.*, *Household Commercial Fin. Servs., Inc. v. Suddarth*, No. 01C4355, 2002 WL 31017608, at *7 (N.D. Ill. Sept. 9, 2002) ("Illinois courts generally enforce clear and unambiguous waivers of defenses contained in guaranties.").

applied to. The Court does not accept Marwit's arguments. Nothing in the Marwit Guaranty purports to limit Marwit's obligations only to post-guaranty invoices. To the contrary, Marwit guarantees in the Marwit Guaranty amounts owing to Homeland on invoices that were more than 90 days aged by December 10, 2010.

Although Marwit argues that the language "when and as the same shall become due to Homeland Vinyl" makes the Marwit Guaranty prospective or forward looking only, that phrase refers to the aging from the date of the invoice, not the date of the invoice itself. Marwit unconditionally guarantees the "full and prompt payment of the accounts payable owing to Homeland Vinyl that are more than 90 days aged from the date of invoice when and as the same shall become due to Homeland Vinyl." The "when and as" phrase refers to the aging. It is clear to the Court that the Marwit Guaranty unambiguously covers all of Best Vinyl's indebtedness to Homeland Vinyl that was over 90 days aged before December 10, 2010. That is the interaction between Sections 2.1 and 3.6 of the Marwit Guaranty.

Because the language of the Marwit Guaranty is clear and unambiguous and because the Court finds that the Marwit Guaranty covers all of Best Vinyl's indebtedness to Homeland Vinyl that was over 90 days aged before December 10, 2010, Marwit's arguments regarding other documents, proffered oral testimony, parol evidence and evidence offered in an attempt to show that Homeland Vinyl was obligated to allocate post-Marwit Guaranty payments in a certain way are irrelevant.

Additionally, the August 10, 2010 and August 11, 2010 e-mails (Dkt. No. 102-1, Exs. 8 and 10) on their face do not establish any agreement to allocate certain payments to certain invoices. To the contrary, they do not show anything more than a discussion regarding payments.

**C.     Homeland Vinyl Performed Any Obligations It Had Under the Marwit Guaranty**

Homeland Vinyl continued to provide credit on 60-day terms to Best Vinyl, and shipped over $4,266,007 of vinyl fence materials to Best Vinyl on 60-day credit terms following the execution of the Marwit Guaranty.  Homeland Vinyl provided 60-day credit terms so that the shipments would be subject to the Marwit Guaranty.

The undisputed facts establish that Homeland Vinyl provided product to Best Vinyl on 60-day credit terms from the date the Marwit Guaranty was executed until September 10, 2010. Homeland Vinyl stopped shipping product to Best Vinyl on 60-day credit terms as of that date because any product purchased by Best Vinyl and invoiced on or after September 10, 2010 – 90 days before the December 10, 2010 termination date of the Marwit Guaranty – would not be covered by the Marwit Guaranty.

In its own Memorandum in Support of Motion for Partial Summary Judgment, Marwit has agreed that "[t]he Guaranty effectively terminates December 10, 2010, so any product purchased by Best and invoiced on or after September 10, 2010 – 90 days before December 10, 2010, would not be covered by the Guaranty."

Marwit cannot complain that Homeland Vinyl ceased providing Best Vinyl 60-day credit terms on September 10, 2010.  Homeland Vinyl shipped product to Best Vinyl on 60-day credit terms for the entire period in which invoices would be covered by the Marwit Guaranty.  The Marwit Guaranty did not require Homeland Vinyl to provide 60-day credit terms to Best Vinyl forever, or for any given period.  Every time Homeland Vinyl shipped product to Best Vinyl on 60-day terms, it complied with its obligations under the Marwit Guaranty and that shipment and related invoice became subject to the Marwit Guaranty.  Homeland Vinyl only seeks to recover amounts from Marwit that relate to Homeland Vinyl invoices that provided 60-day credit terms.

The undisputed facts establish that Homeland Vinyl performed any obligations it had under the Marwit Guaranty.

### D.   Marwit Breached the Marwit Guaranty as a Matter of Law

The undisputed facts establish that invoices dated as early as May 13, 2010, were never paid by Best Vinyl or Marwit and are now aged more than 90 days.  The undisputed facts establish that Marwit has never paid Homeland Vinyl any money under the Marwit Guaranty. Marwit has breached its obligations to Homeland Vinyl under the Marwit Guaranty as a matter of law.

### E.   Homeland Vinyl Has Been Damaged in the Amount of $2,490,405 as a Result of Marwit's Breach of the Marwit Guaranty

On December 15, 2011, Homeland Vinyl timely served a Rule 26(a)(2)(C) Disclosure for its expert witness, Scott Smith.  Part of the disclosure was a spreadsheet Mr. Smith prepared that shows, on a daily basis from December 31, 2008, to December 30, 2010, the amounts of any invoices sent to Best Vinyl, any payments received from Best Vinyl, and the aging of the amounts Best Vinyl owed Homeland Vinyl.  This spreadsheet shows that Best Vinyl has not paid Homeland Vinyl $2,491,204 for product that Homeland sold and shipped to Best Vinyl.  Mr. Smith has declared he compiled the information in the spreadsheet from Homeland Vinyl's regularly kept books and accounting records, and that it is accurate.  No parties have provided any evidence to dispute this amount.

The undisputed facts establish that Best Vinyl failed to pay Homeland Vinyl $2,491,204 for product purchased and invoiced after Marwit executed the Marwit Guaranty, and that of that amount, $2,490,405 was aged more than 90 days before the December 10, 2010 termination date of the Marwit Guaranty.  Therefore, Marwit owes Homeland Vinyl $2,490,405 under the terms of the Marwit Guaranty as a matter of law, and Homeland Vinyl is entitled to a summary

judgment in its favor against Marwit on its counterclaim for breach of the Marwit Guaranty in the amount of $2,490,405, in addition to any other interest, costs or fees to which it may be entitled.

## II. MARWIT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE FOR AN ORDER ESTABLISHING SPECIFIED FACTS AGAINST HOMELAND VINYL (DKT. NO. 102)

For the reasons stated in Section I.B., above, and for the reasons stated in Homeland Vinyl's Memorandum in Opposition (Dkt. No. 109), Marwit's Motion for Partial Summary Judgment or, in the Alternative, for an Order Establishing Specified Facts (Dkt. No. 102) is DENIED.

## III. HOMELAND VINYL'S MOTION FOR SUMMARY JUDGMENT AGAINST SCOTT PETERSEN AND VANCE BARRETT (DKT. NO. 125)

Homeland Vinyl's Motion for Summary Judgment Against Scott Petersen and Vance Barrett (Dkt. No. 125) is granted for the reasons stated in Homeland Vinyl's Memorandum in Support of Motion for Summary Judgment Against Scott Petersen and Vance Barrett (Dkt. No. 127) and Reply Memorandum in Support of Motion for Summary Judgment (Dkt. No. 146) and as follows.

### A. Undisputed Material Facts

1. Homeland Vinyl manufactures and sells vinyl fence materials.

2. Beginning in approximately 2003, Homeland Vinyl began supplying vinyl fence products to Best Vinyl, LLC ("Best Vinyl").

3. Scott Petersen signed a "Continuing Guaranty" dated June 9, 2003 (the "Petersen Guaranty").

4. The Petersen Guaranty states that Mr. Petersen "hereby unconditionally, absolutely and irrevocably guarantee[s] to Homeland . . . the punctual and full payment when

due . . . all of the indebtedness, obligation and liabilities of [Best Vinyl] owed to Homeland now due or to become due, now existing or hereafter incurred . . . ."

5. The Petersen Guaranty states that Mr. Petersen's "liability hereunder is unconditional" and that Mr. Petersen "expressly waive[s] . . . any defense of [Best Vinyl] against Homeland; notice of extensions of credit by Homeland to [Best Vinyl] and of any change in the rate at which the indebtedness is accruing interest; diligence, presentment and demand for payment of the indebtedness . . . notice of non-payment or default to [Mr. Petersen] or to any other person with respect to the indebtedness; any demand for payment under this Continuing Guaranty; any defense available to a surety under law; and all other legally waivable notices to which the undersigned might otherwise be entitled."

6. The Petersen Guaranty states that "[t]his Continuing Guaranty is absolute, primary, and unconditional and the same shall continue in force until written notice of its discontinuance signed by [Mr. Petersen] shall be delivered to, received and consented to in writing by an executive officer of Homeland . . . ."

7. Mr. Barrett signed a "Continuing Guaranty" dated June 26, 2003 (the "Barrett Guaranty").

8. The Barrett Guaranty states that Mr. Barrett "hereby unconditionally, absolutely and irrevocably guarantee[s] to Homeland . . . the punctual and full payment when due . . . all of the indebtedness, obligation and liabilities of [Best Vinyl]  owed to Homeland now due or to become due, now existing or hereafter incurred . . . ."

9. The Barrett Guaranty states that Mr. Barrett's "liability hereunder is unconditional" and that Mr. Barrett "expressly waive[s] . . . any defense of [Best Vinyl] against Homeland; notice of extensions of credit by Homeland to [Best Vinyl] and of any change in the

rate at which the indebtedness is accruing interest; diligence, presentment and demand for payment of the indebtedness . . . notice of non-payment or default to [Mr. Barrett] or to any other person with respect to the indebtedness; any demand for payment under this Continuing Guaranty; any defense available to a surety under law; and all other legally waivable notices to which the undersigned might otherwise be entitled."

10. The Barrett Guaranty states that "[t]his Continuing Guaranty is absolute, primary, and unconditional and the same shall continue in force until written notice of its discontinuance signed by [Mr. Barrett] shall be delivered to, received and consented to in writing by an executive officer of Homeland . . . ."

11. Neither Mr. Petersen nor Mr. Barrett have ever delivered a written notice of discontinuance of the Petersen or Barrett Guaranties to Homeland, and Homeland Vinyl has never consented, in writing or otherwise, to the release of either the Petersen Guaranty or the Barrett Guaranty.

12. Best Vinyl owes Homeland Vinyl $2,491,204 for vinyl fence product purchased and invoiced after the effective dates of the Petersen Guaranty and the Barrett Guaranty.

13. Neither Mr. Petersen nor Mr. Barrett has ever paid Homeland Vinyl any amounts under the Petersen Guaranty or Barrett Guaranty.

### B. Mr. Petersen and Mr. Barrett Breached the Terms of Their Continuing Guarantees

"The elements of a prima facie case for breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and

(4) damages." [6]  The undisputed facts establish each element of Homeland Vinyl's cause of action against Mr. Barrett and Mr. Petersen for breach of their individual Guaranties.

It is undisputed that Mr. Petersen and Mr. Barrett executed the Petersen Guaranty and the Barrett Guaranty.  It is also undisputed that Mr. Petersen's and Mr. Barrett's obligations under those guaranties are unconditional and not subject to any defenses.  It is also undisputed that Mr. Petersen and Mr. Barrett have never delivered a written notice of discontinuance of their Guaranties to Homeland, and that Homeland has never expressly consented to the release of either the Petersen Guaranty or the Barrett Guaranty.  The waiver language in the Petersen and Barrett Guaranties is clear and unambiguous.

### C.  Homeland Vinyl Performed Any Obligations It Had Under the Petersen and Barrett Guaranties

The Petersen and Barrett Guaranties guaranty payment if Homeland Vinyl sells product to Best Vinyl.  It is undisputed that Homeland Vinyl sold millions of dollars of product to Best Vinyl on credit terms.

Importantly, in addition to waiving any defenses to enforcement of the Petersen and Barrett Guaranties, the Petersen and Barrett Guaranties contain additional waivers, including waiving "notice of extensions of credit by Homeland to [Best Vinyl] and of any change in the rate at which the indebtedness is accruing interest; diligence, presentment and demand for payment of the indebtedness . . . notice of non-payment or default to [Mr. Petersen or Mr. Barrett] or to any other person with respect to the indebtedness; any demand for payment under this Continuing Guaranty; any defense available to a surety under law; and all other legally waivable notices to which the undersigned might otherwise be entitled."  As a result, whether

---

[6] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

Mr. Petersen or Mr. Barrett was aware of the amount of credit Homeland Vinyl extended to Best Vinyl and whether Homeland Vinyl made demands on Mr. Petersen or Mr. Barrett is irrelevant. Mr. Petersen and Mr. Barrett expressly waived their right to such notices.

The Petersen and Barrett Guaranties were provided to induce Homeland Vinyl to extend credit to Best Vinyl. However, they do not create any obligation for Homeland Vinyl to extend credit to Best Vinyl indefinitely. Accordingly, Homeland Vinyl's requirement that Marwit provide additional security for Best Vinyl's obligations as a condition for extending further credit to Best Vinyl when the risk of nonpayment increased in March 2010 does not constitute a failure of consideration with respect to the Peterson and Barrett Guaranties.

Therefore, to the extent Homeland Vinyl had any obligations under the Petersen and Barrett Guaranties, Homeland Vinyl fulfilled them.

### D. Mr. Petersen and Mr. Barrett Breached Their Continuing Guaranties as a Matter of Law

The undisputed facts establish that invoices dated as early as May 13, 2010, were never paid by Best Vinyl, and the undisputed facts establish that Mr. Petersen and Mr. Barrett have never paid Homeland Vinyl any money under either of the Petersen and Barrett Guaranties. Mr. Petersen and Mr. Barrett have breached their obligations to Homeland Vinyl under their guaranties as a matter of law. Mr. Peterson's and Mr. Barrett's defense of laches fails as a matter of law because under Alabama law, which governs the Peterson and Barrett Guaranties, laches does not apply to legal claims for damages.[7]

---

[7] *See Elliott v. Navistar, Inc.*, 65 So. 3d 379, 386-87 (Ala. 2010) (holding doctrine of laches should not be applied to bar claims for money damages).

> E.   **Homeland Vinyl Has Been Damaged in the Amount of $2,491,204 as a Result of Mr. Petersen's and Mr. Barrett's Breach of Their Continuing Guaranties**

On December 15, 2011, Homeland Vinyl timely served a Rule 26(a)(2)(C) Disclosure for its expert witness, Scott Smith. Part of the disclosure was a spreadsheet Mr. Smith prepared that shows, on a daily basis from December 31, 2008, to December 30, 2010, the amounts of any invoices sent to Best Vinyl, any payments received from Best Vinyl, and the aging of the amounts Best Vinyl owed Homeland Vinyl. This spreadsheet shows that Best Vinyl has not paid Homeland Vinyl $2,491,204 for product that Homeland sold and shipped to Best Vinyl. Mr. Smith has declared he compiled the information in the spreadsheet from Homeland Vinyl's regularly kept books and accounting records, and that it is accurate. No parties have provided any evidence to dispute this amount.

The undisputed facts establish that Best Vinyl failed to pay Homeland Vinyl $2,491,204 for product purchased and invoiced after Mr. Petersen and Mr. Barrett executed their Guaranties. Therefore, Mr. Petersen and Mr. Barrett owe Homeland Vinyl $2,491,204 under the terms of their Continuing Guaranties as a matter of law, and Homeland Vinyl is entitled to summary judgments in its favor against Mr. Barrett and Mr. Petersen on its claim for breach of the Barrett and Petersen Guaranties in the amount of $2,491,204, in addition to any other interest, costs or fees to which it may be entitled.

## IV.   HOMELAND VINYL'S MOTION FOR SUMMARY JUDGMENT AGAINST MARILYN PETERSEN AND MELANIE BARRETT (DKT. NO. 126)

Homeland Vinyl's Motion for Summary Judgment Against Marilyn Petersen and Melanie Barrett (Dkt. No. 126) is GRANTED for the reasons stated in Homeland Vinyl's Memorandum in Support of Motion for Summary Judgment Against Marilyn Petersen and Melanie Barrett (Dkt. No. 128) and Reply Memorandum in Support of Motion for Summary Judgment (Dkt. No. 146) and as follows.

### A. Undisputed Material Facts

1. Homeland Vinyl manufactures and sells vinyl fence materials.

2. Beginning in 2002, Homeland Vinyl began supplying vinyl fence products to Best Vinyl, LLC ("Best Vinyl").

3. Marilyn Petersen signed a "Continuing Guaranty" dated June 9, 2003 (the "Petersen Guaranty").

4. Melanie Barrett signed a "Continuing Guaranty" dated June 26, 2003 (the "Barrett Guaranty").

5. The Petersen and Barrett Guaranties both state that Ms. Petersen and Ms. Barrett "hereby unconditionally, absolutely and irrevocably guarantee to Homeland . . . the punctual and full payment when due . . . all of the indebtedness, obligation and liabilities of [Best Vinyl] owed to Homeland now due or to become due, now existing or hereafter incurred . . . ."

6. The Petersen and Barrett Guaranties both state that Ms. Petersen's and Ms. Barrett's "liability hereunder is unconditional" and that Ms. Petersen and Ms. Barrett "expressly waive . . . any defense of [Best Vinyl] against Homeland; notice of extensions of credit by Homeland to [Best Vinyl] and of any change in the rate at which the indebtedness is accruing interest; diligence, presentment and demand for payment of the indebtedness . . . notice of non-payment or default to [Ms. Petersen or Ms. Barrett] or to any other person with respect to the indebtedness; any demand for payment under this Continuing Guaranty; any defense available to a surety under law; and all other legally waivable notices to which the undersigned might otherwise be entitled."

7. The Petersen and Barrett Guaranties both state that "[t]his Continuing Guaranty is absolute, primary, and unconditional and the same shall continue in force until written notice of

15

its discontinuance signed by [Ms. Petersen or Ms. Barrett] shall be delivered to, received and consented to in writing by an executive officer of Homeland . . . ."

8. Ms. Petersen and Ms. Barrett never delivered a written notice of discontinuance of the Petersen and Barrett Guaranties to Homeland, and Homeland has never consented, in writing or otherwise, to the release of the Petersen Guaranty or the Barrett Guaranty.

9. Best Vinyl owes Homeland Vinyl $2,491,204 for vinyl fence product purchased and invoiced after the effective date of the Petersen and Barrett Guaranties.

10. Ms. Petersen and Ms. Barrett have never paid Homeland Vinyl any amounts under the Petersen and Barrett Guaranties.

### B. Ms. Petersen and Ms. Barrett Breached the Terms of Their Continuing Guarantees

"The elements of a prima facie case for breach of contract are: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." [8] The undisputed facts establish each element of Homeland Vinyl's cause of action against Ms. Petersen and Ms. Barrett for breach of their guaranties.

It is undisputed that Ms. Petersen executed the Petersen Guaranty and Ms. Barrett executed the Barrett Guaranty. It is also undisputed that Ms. Petersen's and Ms. Barrett's obligations under both guaranties are unconditional and not subject to any defenses. It is also undisputed that Ms. Petersen and Ms. Barrett have never delivered a written notice of discontinuance of their Guaranties to Homeland, and that Homeland has never expressly consented to the release of either the Petersen Guaranty or the Barrett Guaranty. The waiver language in these guaranties is clear and unambiguous.

---

[8] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

16

    **C.    Homeland Vinyl Performed Any Obligations It Had Under the Petersen and Barrett Guaranties**

For the reasons set forth in Section III.C., above, the Court finds that Homeland Vinyl performed any obligations it had under the Petersen and Barrett Guaranties.

    **D.    Ms. Petersen and Ms. Barrett Breached Their Continuing Guaranties as a Matter of Law**

The undisputed facts establish that invoices dated as early as May 13, 2010, were never paid by Best Vinyl, and the undisputed facts establish that Ms. Petersen and Ms. Barrett have never paid Homeland Vinyl any money under either of their guaranties. Ms. Petersen and Ms. Barrett have breached their obligations to Homeland Vinyl under their guaranties as a matter of law. Ms. Peterson's and Ms. Barrett's defense of laches fails as a matter of law because under Alabama law, which governs the Peterson and Barrett Guaranties, laches does not apply to legal claims for damages.[9]

    **E.    Homeland Vinyl Has Been Damaged in the Amount of $2,491,204 as a Result of Ms. Petersen's and Ms. Barrett's Breach of Their Continuing Guaranties**

On December 15, 2011, Homeland Vinyl timely served a Rule 26(a)(2)(C) Disclosure for its expert witness, Scott Smith. Part of the disclosure was a spreadsheet Mr. Smith prepared that shows, on a daily basis from December 31, 2008, to December 30, 2010, the amounts of any invoices sent to Best Vinyl, any payments received from Best Vinyl, and the aging of the amounts Best Vinyl owed Homeland Vinyl. This spreadsheet shows that Best Vinyl has not paid Homeland Vinyl $2,491,204 for product that Homeland sold and shipped to Best Vinyl. Mr. Smith has declared he compiled the information in the spreadsheet from Homeland Vinyl's

---

[9] *See Elliott v. Navistar, Inc.*, 65 So. 3d 379, 386-87 (Ala. 2010) (holding doctrine of laches should not be applied to bar claims for money damages).

regularly kept books and accounting records, and that it is accurate. Ms. Barrett and Ms. Petersen have not provided any evidence to dispute this amount.

The undisputed facts establish that Best Vinyl failed to pay Homeland Vinyl $2,491,204 for product purchased and invoiced after Ms. Petersen and Ms. Barrett executed the Petersen and Barrett Guaranties. Therefore, Ms. Petersen and Ms. Barrett, jointly and severally, owe Homeland Vinyl $2,491,204 under the terms of those guaranties as a matter of law, and Homeland Vinyl is entitled to summary judgments in its favor against Ms. Petersen and Ms. Barrett on its claim for breach of the Barrett and Petersen Guaranties in the amount of $2,491,204, in addition to any other interest, costs or fees to which it may be entitled.

### F. Ms. Petersen's and Ms. Barrett's Equal Credit Opportunity Act Defense

The Court denied Ms. Petersen's and Ms. Barrett's Motion for Leave to Amend Their Answer to add an affirmative defense based on the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.* and Regulation B, 12 C.F.R. § 202, on grounds of untimeliness and futility.

The ECOA and its implementing regulation provide a cause of action for damages, do not expressly provide for rescission, and do not provide for an affirmative defense.

The Court is unaware of any cases from the Tenth Circuit Court of Appeals that recognize the ECOA or its implementing regulation as an affirmative defense to liability, and this Court will not recognize it. Therefore, Ms. Petersen's and Ms. Barrett's arguments regarding the ECOA are irrelevant and do not preclude summary judgment against them.

### V. VANCE BARRETT, MELANIE BARRETT, SCOTT PETERSEN AND MARILYN PETERSEN'S MOTION FOR SUMMARY JUDGMENT AGAINST MARWIT (DKT. NO. 130)

Vance Barrett, Melanie Barrett, Scott Petersen and Marilyn Petersen's (the "Individuals") Motion for Summary Judgment Against Marwit (Dkt. No. 130) is DENIED.

As explained in Section I.B., above, the language of the Marwit Guaranty is clear and unambiguous, and the Marwit Guaranty covers all of Best Vinyl's indebtedness to Homeland Vinyl that was over 90 days aged before December 10, 2010.  As a result, the Marwit Guaranty is as general as the Petersen and Barrett Guaranties with the minor exception of the end date of the Marwit Guaranty.  Therefore, the Individuals' arguments regarding priority sureties, co-sureties and subsureties are irrelevant.

## VI.    CONCLUSION AND ORDER

IT IS THEREFORE ORDERED that the Motion of Marwit Capital Partners II, L.P. for Partial Summary Judgment, Or in the Alternative for an Order Establishing Specific Facts (Dkt. No. 102) is DENIED.

IT IS FURTHER ORDERED that Homeland Vinyl Product, Inc.'s Motion for Summary Judgment against Marwit Capital Partners II, LP (Dkt. No. 121) is GRANTED.

IT IS FURTHER ORDERED that Homeland Vinyl Products, Inc.'s Motion for Summary Judgment Against Scott Petersen and Vance Barrett (Dkt. No. 125) is GRANTED.

IT IS FURTHER ORDERED that Homeland Vinyl Products, Inc.'s Motion for Summary Judgment Against Marilyn Petersen and Melanie Barrett (Dkt. No. 126) is GRANTED.

IT IS FURTHER ORDERED that Vance Barrett, Melanie Barrett, Scott Petersen and Marilyn Petersen's Motion for Summary Judgment Against Marwit Capital Partners II, L.P. (Dkt. No. 130) is DENIED IN PART as to the issue concerning priority sureties, co-sureties, and subsureties.

Dated this 15th day of November, 2012.

BY THE COURT:

_____
David Nuffer   United States District Court Judge